IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

UNITED STATES OF AMERICA                                RESPONDENT

v.                              No. 1:11-cr-40009-001
                                No. 1:13-cv-4003

DANIEL MILLER                                           MOVANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28

U.S.C. § 2255 (ECF No. 85) filed herein by **DANIEL MILLER**, (hereinafter referred to as "Miller")

an inmate confined at the United States Penitentiary, Atlanta, Georgia.  The Motion was referred for

findings of fact, conclusions of law and recommendations for the disposition of the case. The United

States of America (hereinafter referred to as the "Government") has responded to the Motion.  ECF

No. 106.   Miller has replied (ECF No. 116) to that Response and filed a Supplement to the original

Motion (ECF No. 124).   The Court has considered the entire record and the matter is ready for

decision.

## I. Procedural Background:

Miller was arrested on February 16, 2011, on a Federal Criminal Complaint charging him

with distribution of methamphetamine. ECF No. 1. On February 17, 2011, Miller made his initial

appearance before the undersigned.  Mr.  Craig L. Henry was appointed to represent Miller.  ECF

No. 2.

Miller, along with two co-defendants[1], was named in a five-count Indictment returned by the

---

[1]Charles Cook and Rebecca Miller, Miller's wife, were named as co-conspirators in the
Indictment.

Grand Jury for the Western District of Arkansas on February 24, 2011.  ECF No. 4.  Count One charged the defendants with conspiracy to distribute 500 grams or more of methamphetamine as early as 2004 and continuing through 2010.  Count Two charged the defendants with distributing more than five (5) grams of actual methamphetamine on October 8, 2010.   Count Three charged Miller with distributing more than five (5) grams of actual methamphetamine on October 14, 2010. Count Four charged Miller and Rebecca Miller with distributing more than five (5) grams of actual methamphetamine on October 21, 2010.   Count Five charged Miller and Rebecca Miller with distributing more than five (5) grams of actual methamphetamine on December 2, 2010.

On February 25, 2011, Miller appeared with counsel and entered a plea of not guilty to all counts.  ECF No. 10.  Following a detention hearing the Court ordered Miller detained pending trial. ECF No. 11.  Trial was scheduled for April 28, 2011.  ECF No. 17.  The trial date was later continued to May 23, 2011.  ECF No. 32.

A jury trial was held, before United States District Judge Harry F. Barnes on May 23-25, 2011 for Daniel Miller and Rebecca Miller.[2]  ECF No. 40-42. Following the trial, the jury returned a verdict of guilty against Miller in each of the five counts of the Indictment.[3]  ECF No. 43.  The jury also found in favor of the Government on the Forfeiture Count of the Indictment.  ECF No. 45. Judge Barnes directed a Pre-sentence Report ("PSR") be prepared by the United States Probation Office.

---

[2]Charles Cook waived indictment and pled guilty to an information on May 23, 2011, charging him with Misprision of a Felony.  *See U.S. v. Cook*, No. 4:11-cr-40015.  He was later sentenced to twenty-one (21) months imprisonment and the charges against him  in the indictment were dismissed.

[3]Mrs. Miller was found guilty by the jury of a lesser included offense of conspiracy to distribute more than 50 grams of methamphetamine in Count One and of aiding and abetting the distribution of more than five grams of methamphetamine in Counts Two, Four and Five.

The United States Probation Office prepared a PSR.  ECF No. 56 (filed under seal).  Miller, through counsel, filed a Sentencing Memorandum on November 9, 2011.  ECF No. 51.  The Sentencing Memorandum contained various objections to the PSR.  On December 2, 2011, Miller appeared before Judge Barnes for sentencing. On that day, he filed a Motion to Substitute/Remove Counsel (ECF No. 57) alleging various failures of his trial counsel.  Judge Barnes did not rule on this Motion.  After considering Miller's objections to the PSR, Judge Barnes found a total offense level of 40 for each of the five (5) counts of conviction.  Further, Miller's  criminal history category was determined to be VI.  These findings resulted in a United States Sentencing Guideline (USCG) recommended sentences of 360 months to life imprisonment.  Thereafter, Judge Barnes sentenced Miller to a term of imprisonment of 360  months for each of the five counts of conviction (all sentences to run concurrently with each other), imposed a five (5) term of supervised release, denial of federal benefits for five (5) years, and a $100.00 special assessment per count of conviction.  The Court did not impose a fine.[4]

On December 6, 2011, four days after his sentencing hearing, Miller filed a Motion to Make Lawyers File Available (ECF No. 58.).  On this same day, the Court entered its Judgment sentencing Miller as set out above. ECF No. 59.   Judge Barnes did not rule on Miller's Motion to Make Lawyers File Available.

On December 9, 2011, Miller, through counsel, filed a notice of appeal.  ECF No. 63.  On March 12, 2012, Miller, acting *pro se*, filed a second motion seeking to substitute or replace counsel. ECF No. 80.  He requested to be allowed to proceed *pro se* on the appeal or for appointment of new

---

[4]Rebecca Miller was sentenced to 188 months imprisonment.  Following her appeal, the Eighth Circuit remanded for re-sentencing and she was sentenced to 120 months imprisonment.  ECF No. 95; see also U.S. v. Miller, 698 F.3d 699, 703 (8th Cir. 2012).

-3-

counsel.  This Motion was not ruled on by the Court, and Mr. Henry represented Miller throughout the appeal process.

On October 31, 2012, the United States Court of Appeals for the Eighth Circuit affirmed the conviction and sentence.  *See United States v. Miller*, 698 F.3d 699 (8th Cir. 2012), *cert. denied*, 133 S.Ct. 1296 (2013). On appeal, Miller challenged the trial court's denial of his motion seeking to discovery the "case names and numbers, of any trials or evidentiary hearings at which any cooperating witness has testified."  *Id.*  The Court held this "contention is without merit; indeed, it was not properly preserved."  *Id.* at 704.  Miller also argued the trial court abused its discretion by denying his request for production of the PSR of any cooperating witness without first conducting an *in camera* review to determine if the PSR contained any impeachment evidence.  The Court did not agree finding: "neither party asked the court to review a PSR *in camera*. Moreover, to obtain access to another person's PSR, a defendant must make a 'showing of special need.' As Mr. Miller made no such showing, there was no abuse of discretion."  *Id.* at 705.  Next, Miller argued the trial court erred in imposing a two-level increase to his base offense level for maintaining a drug premises.  The Court found no error in this finding of the trial court.  Miller's sentence was affirmed.

Miller sought review by the United States Supreme Court.  The Supreme Court denied *certiorari* on February 19, 2013.  *See Miller v. U.S.*, ___ U.S. ___ 133 S.Ct. 1296 (2013).

**II.  Instant Petition**:

Miller filed a timely Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255 on January 7, 2013.   ECF No. 85.  Miller thereafter filed, with leave of the Court, a Supplemental Motion.  ECF No. 124.

-4-

In his Motion[5], Miller asserts the following claims for relief:

a.   Count One of the Indictment was amended by the Government in closing argument, divesting the Court of Jurisdiction;

b.   Miller was actually innocent of Count One of the Indictment;

c.   The Government did not fulfill its promise to grant Miller immunity from prosecution;

d.   Miller was entrapped by law enforcement;

e.   Miller's sentence of 360 months on each count was unreasonable;

f.   The jury verdict forfeiting Miller's property was in violation of the excessive fine clause.;

g.   The Government allowed false statements to be presented to the Grand Jury;

h.   The Government presented false evidence regarding Miller's work history;

i.   Trial Counsel was ineffective in (a) failing to contest false evidence, (b) failing to introduce phone records of the informant to show he was not reliable, (c) failing to make the foregoing arguments on direct appeal, despite a request by Miller to do so, and (d) failing to object to Miller's "immunized" statements at trial, and (e) failing to subpoena his informant "contract" with the FBI.

j.   Miller cannot be convicted of conspiracy because neither of his co-defendants were convicted of conspiracy.

k.   Miller's post arrest statements cannot support a conspiracy conviction;

l.   The Government failed to prove the drug type and quantity to the jury at trial;

m.   The two-level increase for maintaining a drug premises was improperly applied by the Court;

n.   The Government violated the witness sequestration rule;

o.   The Government improperly used "outdated" prior convictions for criminal history calculation; and

_____

[5]The Court will refer to the Motion and Supplemental Motion collectively as the "Motion."

p. The two-level increase for use of a minor during a drug transaction is in violation of Arkansas state law.

The Government has filed its Response to both the initial Motion and the Supplement. ECF No. 106 and 129. This matter is now ready for decision.

### III. Discussion:

A § 2255 motion is fundamentally different from a direct appeal. The Court will not reconsider an issue, which was decided on direct appeal, in a motion to vacate pursuant to § 2255. *See United States v. Davis*, 406 F.3d 505, 511 (8th Cir. 2005); *Dall v. United States*, 957 F.2d 571, 572 (8th Cir.1992) ( "Claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255 ."). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

Section 2255 allows for relief from a sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States, (2) the court lacked jurisdiction to impose such sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a). A motion pursuant to § 2255 may not be used as "a substitute for appeal or for the purpose of litigating matters not raised on appeal." *Craig v. United States*, 376 F.2d 1009, 1011 (8th Cir. 1967).

**a. Constructive Amendment of the Indictment**: Miller claims the Government obtained an indictment against him for conspiracy to distribute methamphetamine and that it could not thereafter introduce evidence of "elements outside the Grand Jury's indictment." ECF No. 86, p. 6.

-6-

Specifically, Miller says that in closing argument the Government referenced the "Hector" and the "Ricco" conspiracies and such were outside Count One of the instant indictment, thereby amending the indictment and divesting the Court of jurisdiction. He also states the Government failed to show the drug used in the conspiracy was methamphetamine. Finally, he says there was no proof of more than 500 grams of methamphetamine as alleged in the indictment. Accordingly, he argues the facts proven were not those as alleged in Count 1 of the Indictment.

Counsel for the Government made the following statements, in part, in his closing regarding the conspiracy allegation:

> So you don't have to sign a contract saying I'm joining in the Daniel Miller conspiracy, or the Hector conspiracy, or Ricco conspiracy. You simply have to have an understanding that you're going to aid, you're going to agree to aid this conspiracy to distribute drugs. ECF No. 78 p. 358.
> . . .
> This methamphetamine business of Daniel and Rebecca Miller garnered them large amounts of money. We know that from Daniel's statement on the telephone to Colin Dorsey on October 28th. If you will recall he said he had over $200,000 on the street right now, meaning he had fronted out over $200,000 of methamphetamine. And then again to Lt. Gass during the interview in the truck he said I owe Hector, his supplier, over $150,000 for methamphetamine. So on October 22nd he owed $150,000 to Hector and on October 28th he tells the informant he has $200,000 that he has to collect from his suppliers – from his distributors, I'm sorry. ECF No. 78 p. 364.
> . . .
> Then you call the police and get them stopped so that Hector thinks, well, if the police say $608 maybe the courier stole the money, whatever. Daniel can say, hey, I gave the courier all the money. I don't know, he got stopped by the police, they seized the money. Hector, you're out the money. Isn't it a perfect plan? To use the police in furtherance, to try to use the police in furtherance of your drug business. You owe Hector $150,000, you take his dope, you give him $608 as payment and then you call the police and say, stop that car, you'll find money on him. ECF No. 78 p. 369.

These are the extent of the Government's mention of "Hector" or "Ricco" in its closing argment.

An indictment can be constructively amended when "the essential elements of the offense set forth in the indictment are altered, either actually or in effect, by the prosecutor or the court after the grand jury has passed upon them." *United States v. Gavin*, 583 F.3d 542, 546 (8th Cir. 2009)(citations omitted). "A constructive amendment primarily affects the defendant's Fifth Amendment right to indictment by a grand jury...." *United States v. Renner*, 648 F.3d 680, 685 (8th Cir.2011) (quoting *United States v. Adams*, 604 F.3d 596, 599 (8th Cir.2010)).

The Government mentioning a "Hector" or "Ricco" conspiracy in its closing did not amend the indictment in this case. Count One charged Miller with conspiring to distribute methamphetamine with his co-defendants "and others known and unknown" to the Grand Jury. ECF No. 4. Miller's statement to law enforcement, which was introduced at trial clearly provides evidence that Hector and Ricco were among the "others" involved in the charged conspiracy. *See* ECF No. 78, Trial Transcript: Recorded Statement of Miller, p. 243, 244, 253, 255, 256, 259, 281, 290, 291. Additionally, other witnesses for the Government testified "Hector" and "Ricco" were among the others involved in the conspiracy. *See* ECF No. 78, Trial Transcript: Chris Hembree, p. 77, 79, 82-83; Stephen Gass, p. 231, 232, 234. It is clear from the evidence in the record, Miller, his co-defendants, along with "Hector," "Ricco" and others were all involved in the same conspiracy. It is just as clear Miller's actions in furtherance of the conspiracy occurred in large part in Miller County, Arkansas, which is within the Western District of Arkansas.

The elements of the offense charged in the Court's instructions (ECF No. 78, p. 337) were the same as those charged in the Indictment. There was no constructive amendment of the indictment during the Government's closing argument. This claim should be denied.

**b.  Actual Innocence as to Count One**:  Miller contends he is actually innocent of Count One of the indictment, the conspiracy count.  Specifically, he claims the Government failed to present sufficient proof of each element of conspiracy to distribute methamphetamine.  He states: "the evidence at trial was to the drug actual the indictment charged offense was methamphetamine." Count One of the Indictment alleges, in part, Miller was charged with conspiring to distribute a controlled substance, "namely a mixture or substance containing a detectable amount of methamphetamine. . . over the course of and as part of the conspiracy 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine was distributed."  ECF No. 4.  The Government called Angela Walker as a witness.  ECF No. 78, p. 60-65.  Ms. Walker testified as a forensic chemist.  She identified Government's Exhibit 1 as evidence she had received to test for possible controlled substance.  She testified this Exhibit was methamphetamine.  ECF No. 78, p. 64.  She also testified that "actual methamphetamine" means the amount of pure drug contained in a particular sample.  There were several other witnesses who all testified Miller was involved in distributing methamphetamine over the course of the conspiracy.  His claim of actual innocence has no basis and should be denied.

**c.  Government's "promise" to grant Miller immunity from prosecution**: Miller claims he was an informant rather than a conspirator and was promised immunity in exchange for his assistance to law enforcement in the investigation of this case.  He claims the law enforcement agencies promised him immunity and later did not fulfill that promise.  The Government calls this claim "complete fiction."

First, I note there was evidence introduced at the trial showing at least four separate

controlled purchases of methamphetamine from Miller by a confidential informant, who was

working for law enforcement.  Further, Miller in his case in chief, called law enforcement officers,

Mike Liles, Carl Malloy, Terry Russell, and Lance Cline for the purpose of establishing he was

working for law enforcement.  Each of these witnesses denied any agreement with Miller and further

denied any authorization to sell methamphetamine as part of some law enforcement operation.

Mike Liles a Miller County Deputy Sheriff testified in part:

Q       Did you, in fact, use him for one or two things?
A       No, I've never used Daniel Miller.
. . .
Q       And do you recall an occasion where Daniel Miller took you to several sites
        where there were meth labs?
A       No, sir, I don't recall Daniel Miller taking me anywhere where there was a
        meth lab.

Deputy Liles also described a few occasions where Miller did provide information related to drug

trafficking which on at least one occasion led to an arrest.  However, no drugs were located on the

individuals arrested.  He went on to testify it was his belief Miller had purchased a large amount of

methamphetamine from these individuals and given them a large amount of "fake money" in

exchange.  ECF No. 78, p. 302-310.

Special Agent Carl Malloy of the FBI testified in part:

Q       Okay. And what was the subject of that meeting in your office?
A       To see if he wanted to provide information.
Q       And is there a process - and did he respond that he wanted to provide
        information?
A       Yes.
. . .
Q       Okay, did you officially sign him up as an informant, I guess, is the
        question?
A       Yes.
Q       And once he was signed up as an informant, what jobs did he do for you, for

<pre style="white-space:pre-wrap">
           lack of a better word?
A          He provided me some information about subjects and people involved in
           criminal activity.
. . .
Q          Did he indicate to you that he wanted to participate in what we call a
           "controlled buy?"
A          He - most of the stuff he was talking to me about was the stolen property.
           But he did say he had some people in Dallas that were high level dealers that
           he knew that he could complete a buy through?
Q          Okay, and did you follow up that information with Mr. Miller?
A          I did.
Q          And what activities did y'all do to reach the goal? A We never did because
           he didn't provide me with complete information. I never did - I never got
           last names or I didn't get good information and it would change a little. And
           I left it with the point that he needed to provide me with further information
           so I could check that out.
. . .
Q          Did the FBI, in fact, pay Mr. Miller for the information that he supplied?
A          Yes.
Q          Do you recall the amounts of money that the FBI paid Mr. Miller?
A          Yes, $600 one time and $750 another time.
Q          So at least on two occasions he had provided informationthat was valuable
           to the FBI?
A          Yes.
. . .
Q          During your dealings with him, did you become yourself concerned that he
           was simply trying to get close to law enforcement to find out if he was being
           investigated, or else steer law enforcement down a trail that led away from
           his criminal activity?
A          I believe Mr. Miller knew that he wasn't going to get any information from
           me, really, but I felt that he was using me to protect him in certain instances.
           He would mention some property, stolen property, he would tell me that I'll
           turn that over to the police. I would ask him about it, he never had done that.
           In my experience, I thought that he had probably had access to that
           equipment and that if he ever got caught with it, he had told me about it and
           he would just say, I'm driving it to the FBI. It was a motorcycle.
Q          So, I guess, in a word you felt used by Mr. Miller?
A          I did.
</pre>

ECF No. 311-320.

Deputy Terry Russell of the Case County, Texas, Sheriff's Department testified in part as

follows:

> Q     Were you approached by Daniel Miller with regards to he working for you as
> a confidential informant?
>
> A     Yes, through Mike Liles, Miller County.
>
> . . .
>
> Q     Okay. And could you tell us, sir, what happened at that meeting?
>
> A     We walked in, I introduced him. Richard Greer and Lance Cline were there.
> I think Lance Cline was actually the one that was gonna work the case. They
> asked Daniel about some different things, names he knew. He went to naming
> several names that he could work for them. And they knew the names, I
> didn't know the names.
>
> Q     So based on your understanding of the conversation that occurred that day,
> Mr. Miller was giving good and accurate information?
>
> A     Yeah, at that time, yeah.

Deputy Russell also testified he was unaware of Miller actually working as a confidential informant for the Texas Department of Public Safety.  He also testified Miller was under investigation by his office at the time Miller contacted the officer.  Deputy Russell testified Miller never provided him with useful information. ECF No. 78, p. 320-325.

Finally Miller called Agent Lance Cline of the Texas Department of Public Safety, Criminal Investigation Division as a witness.  Agent Cline testified in part as follows:

> Q     And did you, based on your meeting with Mr. Miller, sign him up formally
> as a confidential informant?
>
> A     I did not.
>
> . . .
>
> Q     And was that information helpful to you in your investigation?
>
> A     Actually, at the time we didn't have much to go on, we had some nicknames.
> He didn't know the actual name of some of these offenders that he said he
> had these long dope relationships with. He'd tell us how much dope that he
> used to get shipped into this area, but he didn't know their actual names.

Agent Cline also testified his office had an ongoing investigation into Miller's methamphetamine trafficking and it had received numerous complaints about Miller.  Agent Cline also said it was apparent Miller was going to various law enforcement agencies attempting to find out what

information those agencies had about him.  ECF No. 78, p. 325-331.

It is clear from the evidence in this case Miller was not offered immunity from prosecution from any agent or lawyer for the Government.  Further, it is equally clear based on the testimony introduced by Miller, he was going from agency to agency in an effort to determine how much information the agencies had about his won drug trafficking.  Miller's claim of immunity has no basis and should be denied.

**d.  Entrapment**: Similar to his claim of immunity, Miller claims he was entrapped by law enforcement.  He refers generally to the trial transcript, discussed above, stating "the Government agents requested Miller to commit these crimes and therefore entrapment is shown."

"Entrapment occurs only when the criminal conduct was 'the product of the creative activity' of law-enforcement officials."  *Sherman v. United States*, 356 U.S. 369, 372 (1958).  Proof of the defense of entrapment focuses on the predisposition of the defendant  to commit the crime.  *See United States v. Williams*, 720 F.3d 674, 685-86 (8th Cir. 2013).  The Court should conclude that the defendant was entrapped as a matter of law, only if the evidence clearly shows the government agent developed the criminal plan and that the defendant was not predisposed to commit the crime in the first place.  *See Williams*, 720 F.3d at 697(citations omitted).  Finally, entrapment is typically a question of fact for the jury rather than law for the judge.  *See id.*

A close review of the evidence of entrapment offered by Miller show no entrapment. No law enforcement official asked Miller to commit a crime.  No law enforcement official even implied to Miller he should commit crime.  Further, the primary information Miller provided to law enforcement was in relation to property crimes not drug trafficking.  It is clear based on the evidence presented at trial, no defense of entrapment was available.  Accordingly, Judge Barnes did not give

-13-

an instruction to the jury as there was no evidence to support this defense. Miller's claim of entrapment should be denied.

    **e. Unreasonable Sentence**: Miller claims the sentence of 360 months on each of the five counts of conviction was unreasonable. He claims the Court misapplied the United States Sentencing Guidelines, and that the guideline range for each of the five counts should have been 63-78 months rather than 360 months to life. Miller makes no specific guideline calculation, however. The Government asserts this type of attack on a guideline calculation may not be made for the first time in a § 2255 proceeding.

    The Eighth Circuit addressed Government's argument in *Auman v. United States*, 67 F.3d 157 (8th Cir. 1995). There, the Court stated:

> Auman's Sentencing Guideline claim is not properly brought under section 2255, but should have been raised on direct appeal. See United States v. Ward, 55 F.3d 412, 413 (8th Cir.1995) ("Collateral proceedings under 28 U.S.C. § 2255 cannot be made to do service for an appeal."). While section 2255 does provide relief for cases in which "the sentence was in excess of the maximum authorized by law," this provision applies to violations of statutes establishing maximum sentences, rather than garden-variety Sentencing Guideline application issues.

*Id.* at 160-61. Miller's claims here are "garden-variety" guideline application claims. They can not be brought for the first time in a collateral proceeding. A collateral attack on a sentence pursuant to § 2255 cannot advance a claim of improper application of the sentencing guidelines. *See United States v. Ward*, 55 F.3d 412, 413 (8th Cir.1995) ("Collateral proceedings under 28 U.S.C. § 2255 cannot be made to do service for an appeal."). While the Court may review a sentence alleged to be in excess of the statutory maximum, attacks on guideline application must be made on direct appeal. Miller's claim therefore is not cognizable in this § 2255 proceeding. This claim should be denied.

If the Court were to consider the merits of this claim, it still fails.  I note the PSR recommended a base offense level of 38.  The Court at sentencing accepted Miller's request of a base offense level of 32 based on 64 grams of actual methamphetamine attributed to him in four controlled deliveries to law enforcement.  The Court then applied an eight level increase for various offense characteristics.  A base offense level 40 with a criminal history category IV results in an USSG range of 360 months to life imprisonment, exactly what the Court applied here.  Miller was sentenced to the low end of that guideline range.  Miller makes no specific objection to this calculation in the instant Motion, rather he says the 360 month sentence is unreasonable.  Miller's claim of an unreasonable sentence should be denied.

**f. Forfeiture**: Miller claims the Jury verdict forfeiting a motorcycle was in violation of the excessive fines clause of the Eighth Amendment.  He asserts the motorcycle value was more than the value of the drugs at issue and was therefore not subject to forfeiture.  By its nature § 2255 affords relief from sentence of imprisonment.  *See Shephard v. United States*, 735 F.3d 797, 798 (8th Cir. 2013)("Shephard is not claiming a right to be released from custody, and thus, even if she could demonstrate that counsel was ineffective, the claim [illegal restitution order] may not be raised in a section 2255 motion.").  Here, Miller's claim of an excessive forfeiture cannot be brought in a § 2255 proceeding and should be denied.

**g. False Statements Presented to the Grand Jury**: Miller next claims the Government committed misconduct in presenting "false" statements to the Grand Jury which returned the Indictment against him.  Specifically, he asserts law enforcement agent Chris Hembree testified Miller had handed drugs to an informant when in fact Miller's son actually handed the drugs to the informant.  This misstatement is error according to Miller and the Grand Jury would not have issued

the Indictment but for this false statement.   While the knowing use of false testimony by the Government may in fact be cause for relief under § 2255, *see Crismon v. United States*, 510 F.2d 356, 357 (8th Cir.1975), this does not appear to have happened in this case.

Agent Hembree testified:  "The CI stated that Daniel Miller gave his son a quick head nod and his son then produced one ounce of methamphetamine, which he gave to Daniel, who in turn gave it to our confidential informant."  Grand Jury Transcript p.7.  It appears Miller's assertion is factually incorrect.  Miller does not contest that he received a payment from the CI for the drugs, nor does he contest nodding to his son to produce the drugs to give to the CI.  Agent Hembree was specific in his testimony and in fact says exactly what Miller contends happened.  Miller offers no other proof of "false" testimony before the Grand Jury.  Finally, Miller was convicted by a jury after presentation of the evidence.  Because he was so convicted by a jury which had no knowledge of any alleged misconduct before the Grand Jury, Miller has not been prejudiced even if his claim is true. *See United States v. Amaya,* 13-2378, 2014 WL 1387257 (8th Cir. Apr. 10, 2014)  ("To obtain dismissal of an indictment, a defendant must generally show both flagrant misconduct and substantial prejudice."), *quoting United States v. Tulk*, 171 F.3d 596, 598 (8th Cir. 1999).  This claim has no merit and should be denied.

**h.  False Evidence Regarding Miller's Work History**: Miller claims the Government presented false evidence to the Court during the forfeiture portion of the trial regarding his work history.  Specifically, he claims the Government wrongly introduced evidence he had not worked in 21 years and thus supported the claim he was a drug dealer.   The forfeiture portion of the trial had no effect on the conviction as it occurred after the jury returned a verdict of guilty.  ECF No. 78, p. 391-95. As noted above, this claim is not cognizable in a § 2255 proceeding as it does not seek

release from prison.  *See  Shephard v. United States*, 735 F.3d 797, 798 (8th Cir. 2013).

Even if the Court were to review the claim on its merits, it fails.  Further, a review of the record here shows Miller's assertion has no merit.  The Government called Agent Eric Hayworth of the Drug Enforcement Administration as its only witness for forfeiture.  Agent Hayworth testified Miller's wife, co-defendant Rebecca Miller, told him Miller had not worked at a steady job since 2004.  She also told Agent Hayworth much of the property Miller owned was purchased with the proceeds of drug transactions.  Miller's assertion is simply not correct.  This claim should be denied.

   **i.  Ineffective assistance of Counsel**: Miller makes several claims of ineffective assistance of counsel.  Miller was represented at trial and on appeal by Mr. Craig L. Henry, a member of this Court's Criminal Justice Act Panel.

   In order to prevail on an ineffective assistance of counsel claim, a movant must show that (1) his "trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence"; and (2) "the deficient performance prejudiced [his] defense."  *See Toledo v. United States*, 581 F.3d 678, 680 (8th Cir. 2009)(quoting *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir.1995)). When considering the first element, there is a "strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance and sound trial strategy."  *Toledo*, 581 F.3d at 680 (quoting *Garrett v. United States*, 78 F.3d 1296, 1301 (8th Cir.1996) (citing *Strickland v. Washington*, 466 U.S. 668, 689,(1984)).   "The burden of proving ineffective assistance of counsel rests with the defendant."  *United States v. White*, 341 F.3d 673, 678 (8th Cir. 2003)(citing *United States v Cronic*, 466 U.S. 648, 658 (1984)).

   In testing the first element of an ineffective assistance of counsel claim, counsel's alleged deficient performance, when a defendant complains that counsel failed to challenge the state's case,

"The failure to oppose the prosecution's case must involve the entire proceeding, not just isolated portions." *White*, 341 F.3d at 678.   Except in instances where a defendant can show a failure of such magnitude there is typically no basis for finding a denial of effective counsel unless he can show specific errors that "undermined the reliability of the finding of guilt. . ." *Id.*   If the Court finds deficient counsel and thus considers the element of prejudice, a defendant must establish "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.   The Court should not consider the cumulative effect of alleged errors by counsel. *See Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006).

The court will address each of Miller's claims below:

**(1) Failure to contest false evidence**:   Miller claims his trial counsel was ineffective for failing to object to the "false" testimony.   As noted above, Miller makes two claims of "false" testimony.   First, he claims Agent Hembree falsely testified to the Grand Jury about who physically handed methamphetamine to a CI.   Second, he claims Agent Hayworth falsely testified at the forfeiture proceeding.   Miller's trial counsel did not object to the alleged "false" testimony.   I will not repeat the discussion above regarding these two instances of alleged false testimony.   In both instances, it is clear from the record the testimony was not false.   Further, even had counsel objected and the objection been sustained, there would have been no effect on the jury's verdict here. Accordingly, Miller cannot show prejudice under *Strickland* and this claim should be denied.

**(2) Failure to request phone records of an informant**: Miller claims his trial counsel was ineffective for failing to request the phone records of an informant used against him in the investigation.   Miller states, without elaboration, these phone records would have established the informant was not reliable.   There is no indication trial counsel should have requested these records.

-18-

Counsel's strategic choices are given a high degree of deference by reviewing courts.   See *Toledo*, 581 F.3d at 680.  Trial counsel's efforts here did not fall below an  objective standard of reasonable competence.

Miller offers no indication of what these phone records would establish.   What was introduced at trial are recordings of the actual phone calls between Miller and the informant.  ECF No. 78, p. 171-204.   The jury heard these recordings.  Further, Miller's counsel cross-examined the informant regarding his previous drug use, his motivation for testifying, his ability in the past to receive reduced sentences for his cooperation, and his general inclination to engage in criminal conduct.  A review of counsel's cross examination shows it to be thorough and well executed.  There is no indication that requesting or introducing the records of calls between Miller and the informant would have any effect whatever on this trial.    Miller has failed to show any prejudice under *Strickland* and this claim should be denied.

**(3) Failure to make certain arguments on direct appeal**: Miller claims his trial counsel was ineffective for not making the forgoing arguments on appeal despite his request to do so.  For the same reason outlined above, Miller's trial counsel was not ineffective for failing to make meritless arguments.

**(4) Failure to object to Miller's "immunized" statements at trial**: Miller claims his trial counsel was ineffective for failing to object to his "immunized" statements being used by the Government at trial.  As discussed above, the record in this case establishes conclusively Miller did not receive immunity from any law enforcement agency or lawyer for the Government.  Trial counsel cannot be ineffective for failing to introduce a nonexistent immunity agreement.   His claim here does not establish the first prong of *Strickland,* namely, trial counsel's efforts here fell below an

-19-

objective standard of reasonable competence.  This claim should be denied.

**(5) Failure to subpoena his informant "contract" with the FBI**: Miller also claims his trial counsel was ineffective for failing to subpoena his informant agreement with the FBI.  Special Agent Malloy did testify he entered into an informant's agreement with Miller.  Agent Malloy testified and admitted this agreement.  He also testified Miller gave him information primarily dealing with stolen property.  The Government did not introduce any statement made by Miller to Agent Malloy during its case in chief.  Rather, Miller called him as witness.  Trial counsel did examine Agent Malloy thoroughly regarding his dealings with Miller.  Miller makes no assertion what the written agreement contained, how it differed from anything Agent Malloy testified about, or how the written agreement could have changed the outcome in this case.  Miller has again failed to show trial counsel's efforts here fell below an objective standard of reasonable competence as required by the first prong of *Strickland*.  This claim should be denied.

**j. Co-Defendant's Convictions**: Miller claims he cannot be convicted of conspiracy because neither of his two co-defendants was convicted of conspiracy.[6]  If all other co-conspirators are found not guilty, then one person alone cannot be convicted for conspiracy.  "An individual cannot be convicted for conspiring with himself."  *United States v. Bell*, 651 F.2d 1255, 1258 (8th Cir. 1981). However, where the indictment alleges persons known and unknown to the Grand Jury were involved in the conspiracy, a conviction may stand notwithstanding the acquittal of all co-defendants. *See United States v. Jones*, 880 F.2d 55, 65 (8th Cir. 1989).

Here, the indictment alleged Miller, Rebecca Miller, Charles Cook and other persons, both

---

[6]Rebecca Miller was found not guilty of conspiracy by the jury and Charles Cook pled guilty to misprision of a felony.

known and unknown participated in the conspiracy charged. This conspiracy covered a period of several years and operated over at least three states according to the trial record. Charles Cook was not convicted of conspiracy. Rebecca Miller was convicted of conspiracy, and at least two other persons were acknowledged by Miller himself in his statements to law enforcement to be involved in the conspiracy, "Hector" and "Ricco." Based on the evidence in the record in this case, Miller entered into an agreement with others to distribute methamphetamine. The Jury convicted him of this offense after being instructed by the Court on the law of conspiracy. This claim has no merit and should be denied.

**k. Post Arrest Statements**: Miller asserts any post arrest statement he made could not have been used to sustain a conspiracy conviction, because it was not "in furtherance" of the conspiracy. It appears from Miller's claim he asserts his own statements made to law enforcement after his arrest are not admissible to establish the conspiracy. Miller's argument is simply wrong. Each of the cases cited by Miller deal with the statements of a co-conspirator. Generally speaking, a statement made by a co-defendant post-arrest cannot be said to be in furtherance of the conspiracy and is thus not admissible. However, a statement "made by the party's co-conspirator during and in furtherance of the conspiracy" is admissible. FED. R. EVID. 801(d)(2)(E).

The custodial statement of a defendant is admissible against him. There is no allegation Miller's statements were coerced or involuntary. There is no allegation his statements were taken without him being advised of his right to counsel. This claim has no basis and should be denied.

**l. Drug Type and Quantity**: Miller claims the Government failed to establish the drug type or amount in its proof, and thus his conviction must be set aside. Specifically, he claims the Government had to prove the specific type of methamphetamine he was accused of distributing.

Miller has not made this point either at trial or on direct appeal.  Generally, such claims cannot be brought for the first time on collateral attack by § 2255.  "[C]laims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice."  *Massaro v. United States*, 538 U.S. 500, 504 (2003)(*citations omitted*).   To show cause excusing procedural default, a movant must show that some external factor beyond his or his attorney's control caused the procedural default.  *See Turner v. Delo*, 69 F.3d 895, 896-97 (8th Cir.1995); *see also McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (petitioner may establish cause by showing that the basis for the claim was not reasonably available to his counsel or that some interference by officials made compliance impracticable). A movant asserting prejudice must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *United States v. Frady*, 456 U.S. 152, 170 (1982); *see also Swedzinski*, 160 F.3d at 501.

Alternatively, a movant must show a fundamental miscarriage of justice or actual innocence to avoid dismissal of procedurally defaulted claims.  *See Swedzinski v. United States*, 160 F.3d 498, 500 (8th Cir. 1998).  In short, a movant wishing to excuse his procedural default on the "fundamental miscarriage of justice" prong must demonstrate actual innocence.  *Sweet v. Delo*, 125 F.3d 1144, 1152 (8th Cir. 1998). More specifically, this requires a showing of "clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner [guilty]."  *Sawyer v. Whitley*, 505 U.S. 333, 335 (1992).

Here, Miller makes no claim of cause for not raising this issue at trial or on appeal.  He likewise makes no showing of prejudice.  Finally, he cannot and does not claim actual innocence based on the record before the Court.   Accordingly, this claim is procedurally barred.

Even if it is not procedurally barred, the claim fails. Miller claims *Alleyne v. United States*, ___ U.S. ___, 133 S.Ct. 2151 (2013) requires reversal of his conviction because the Indictment did not specify which type of methamphetamine he was charged with delivering. I note initially, *Alleyne* was a direct appeal of a criminal conviction. In that case, the defendant was convicted of robbery affecting commerce and use of firearm during and in relation to crime of violence. Following a conviction by a jury, the defendant was sentenced to 130 months' imprisonment. Defendant appealed and the United States Court of Appeals for the Fourth Circuit affirmed the conviction and sentence. The jury indicated on the verdict form that Alleyne had "[u]sed or carried a firearm during and in relation to a crime of violence" but did not indicate a finding that the firearm was "[b]randished." *Alleyne*, 133 S. Ct. at 2156. The pre-sentence report recommended seven year sentence reflecting the mandatory minimum sentence for cases in which a firearm has been "brandished," rather than a five year mandatory minimum sentence for "using or carrying" a firearm. *See id.* at 2156. The district court overruled the defendant's objection to this and explained that "brandishing" was a sentencing factor it could find by a preponderance of the evidence. Defendant was then sentenced to seven years on this count. *See id.*

The Supreme Court stated "The touchstone for determining whether a fact must be found by a jury beyond a reasonable doubt is whether the fact constitutes an 'element' or 'ingredient' of the charged offense." *Alleyne*, 133 S. Ct. at 2158. The Court further stated *"Facts that increase the mandatory minimum sentence* are therefore elements and must be submitted to the jury and found beyond a reasonable doubt." *Id.*(emphasis added). *Alleyne* specifically overruled *Harris v. United States*, 536 U.S. 545 (2002), holding:

> Because the finding of brandishing increased the penalty to which the defendant was
> subjected, it was an element, which had to be found by the jury beyond a reasonable

doubt. The judge, rather than the jury, found brandishing, thus violating petitioner's Sixth Amendment rights.

*Alleyne v. United States*, ____ U.S. ____, 133 S. Ct. 2151, 2163-64 (2013). *Alleyne* essentially applies the rule of *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Now the law is clear, based on *Alleyne* and *Apprendi*, any fact that changes the statutory range of punishment must be proven to a jury beyond a reasonable doubt.

As noted, the decision in *Alleyne* is a new rule of constitutional law, overruling a prior decision of the Supreme Court. Generally, new constitutional rules *are not* applied retroactively to cases on collateral review, such as this one. *See Teague v. Lane*, 489 U.S. 288, 303 (1989). There are two exceptions to the *Teague* retroactivity rule. First, a new rule which places certain kinds of individual conduct beyond the power of the criminal law-making authority to proscribe or otherwise prohibits imposition of a certain type of punishment for a class of defendants because of their status or offense will be applied retroactively on collateral review. *See Caspari v. Bohlen*, 510 U.S. 383, 396 (1994) Second, a new rule which announces a new "watershed" rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding will be applied retroactively. *See id.*

*Alleyne* does not fall within either of foregoing exceptions. Therefore, it cannot be applied retroactively unless it is specifically made retroactive to collateral proceedings, such as § 2255 proceedings, by the Supreme Court. *See Dodd v. United States*, 545 U.S. 353, 359 (2005). The Supreme Court has not applied *Alleyne* retroactively. The United States Court of Appeals for the Eighth Circuit has discussed *Alleyne* on several occasions, but has not found it should be retroactively applicable. *See e.g. United States v. Lara-Ruiz*, 721 F.3d 554, 557 (8th Cir. 2013)( fact increasing either end of the [sentencing] range produces a new penalty and constitutes an ingredient

-24-

of the offense.);  *United States v. Abrahamson*, 731 F.3d 751 (8th Cir. 2013)(increased statutory minimum as result of prior drug conviction not required to be submitted to the jury).  The Eighth Circuit has discussed the retroactive effect of *Apprendi* and determined the rule announced there would not be retroactively applied by the Supreme Court.  *See United States v. Moss*, 252 F.3d 993, 999-1000 (8th Cir. 2001).

At least one Court of Appeals has discussed the issue of retroactive application of *Alleyne*, and determined the Supreme Court is not likely to apply this new rule retroactively.  The Seventh Circuit has held recently:

> *Alleyne* is an extension of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The Justices have decided that other rules based on *Apprendi* do not apply retroactively on collateral review. This implies that the Court will not declare Alleyne to be retroactive. But the decision is the Supreme Court's, not ours, to make. Unless the Justices themselves decide that *Alleyne* applies retroactively on collateral review, we cannot authorize a successive collateral attack based on § 2255(h)(2) . . . .

*Simpson v. United States*, 721 F.3d 875, 876 (7th Cir.2013)(citations omitted).

Miller's claim based on *Alleyne* should be denied.

**m.  Two-level Increase for Maintaining a Drug Premises**: Miller claims the trial court erred in assessing a two-level increase on his total offense level under the guidelines for his maintenance of a drug premises.  He claims he was not charged with violating 18 U.S.C. § 856, and thus this enhancement is not applicable under the sentencing guidelines.  This issue has been resolved on direct appeal in this case.  The Eighth Circuit has previously held as follows:

> Mr. Miller admitted that he distributed massive quantities of methamphetamine between 2004 and 2010, that he told customers they would find the methamphetamine in unusual locations such as beside a fence post and he would collect the purchase price at a later time, and that he kept ledgers with the names and locations of suppliers and customers that the government recovered and presented at trial. On October 22, 2010, Mr. Miller reported to local law enforcement officers that someone had planted ten grams of methamphetamine in his home and tried to

-25-

convince the officers to use him as a confidential informant, claiming to know every drug dealer in the area. <u>The district court did not clearly err in finding that Mr. Miller "maintained" the premises for drug distribution.</u>

*United States v. Miller*, 698 F.3d 699, 706 (8th Cir. 2012) *cert. denied*, 133 S. Ct. 1296, 185 L. Ed. 2d 224 (U.S. 2013) (emphasis added).  This Claim should be denied.

    **n.  Witness Sequestration**: Miller claims the Government violated the trial court's order regarding sequestration of witnesses.  He claims the Government "congregated" with his subpoenaed witnesses during the trial.  Specifically, Miller alleges the Government met with his witnesses prior to trial in seclusion in his absence.  The Government asserts this claim cannot be raised in a § 2255 proceeding because Miller did not raise it on direct appeal.  Unless Miller's claim is based on newly discovered evidence it is not cognizable in this § 2255 proceeding.  *See United States v. Little*, 608 F.2d 296, 300 (8th Cir. 1979).  The Eighth Circuit in *Little* held a movant's "failure to appeal from an adverse decision in 1965 and his failure to raise these allegations during the thirteen years since his second motion for a new trial" prevented his raising the issues in a § 2255 proceeding. *Little* did indicate that newly discovered evidence would allow such a claim to be made.  *See id.*  Here Miller makes no assertion he did not know of this alleged conduct by the Government.  Accordingly, his claim should be denied.

    Even if true, and even if Miller had recently "discovered" the facts which led to this claim, it would still fail.  Rule 615 states as follows: "At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony."  FED. R. EVID. 615.  "Unless a district court specifies otherwise in a particular sequestration order, sequestration orders under Rule 615 do not forbid all contact with all trial witnesses at all times."  *United States v. Engelmann*, 701 F.3d 874, 877 (8th Cir. 2012).  At the beginning the trial in this case, Judge Barnes entered the following

Order from the bench regarding witnesses:

> Those people in the courtroom will have to leave - or witnesses, will have to leave the courtroom until such time as you've been called to testify. So if you would leave now, or if you are in the court, please - until such time as you have been released from your subpoenas.

ECF No. 78, p. 40.   No other order was entered regarding sequestration of witnesses.   The Government was not precluded from talking to witnesses prior to their testimony.   This claim should be denied on the merits.

**o.  Use of "Outdated" Convictions in Criminal History Calculation**: Miller claims the Trial Court's criminal history calculation improperly considered certain "outdated" convictions.   The Government again says this claim is not one which can be brought in a § 2255 case.   As noted above, a "garden-variety" guideline application claim, such as this, cannot be brought for the first time in a collateral proceeding.   See *Auman v. United States*, 67 F.3d at 161. This claim should be denied.

Further, even if this claim were not barred, it would fail.   A close consideration of the criminal history calculation performed by Judge Barnes shows his calculation to be correct.   The Court considered Miller's objections at sentencing and overruled them.

In considering the claim on its merits, I first note Count One of the Indictment provides the date of Miller's commencement of the offense as 2004.   Each of the convictions Miller complains of were within ten years of 2004.   ECF No. 56, ¶¶ 33-34.   He was also properly assessed one criminal history point for convictions which did not carry a term of imprisonment (ECF No. 56, ¶¶ 29-32), as USSG § 4A1.1(c) expressly provides: "(c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection."

Paragraph 27 of the PSR assessed two points for a conviction in 1991, which assessed a term

of 10 years probation to Miller.  He claims the 10-year term was later modified to 24 months and thus this conviction is two old to be counted.  The Government contends the two points should be counted and cites *United States v. Martinez–Cortez*, 354 F.3d 830, 832 (8th Cir. 2004) for the proposition a later modification of a sentence unrelated to his guilt or innocence does not change the applicability of the guidelines.   I do not have to decide this issue because even if Miller is correct his criminal history category would have been an 11, considering this with a total offense level 40 would have resulted in a sentence range of 360 months to life imprisonment.  Thus, Miller has suffered no harm.   This claim should be denied.

   **p.  Two-level Increase in Total Offense Level for use of a Minor During a Drug Transaction**:  Lastly Miller claims the Trial Court improperly assessed a two-level increase in his total offense level because of his use of minor in a drug trafficking crime.  The Government again says this claim is not one which can be brought in a § 2255 case.   As noted above, a  "garden-variety" guideline application claim, such as this, cannot be brought for the first time in a collateral proceeding.  See *Auman v. United States*, 67 F.3d at 161. This claim should be denied.

   Assuming Miller could present this claim here, his specific assertion fails.  Miller claims Arkansas law defines a minor as someone who is seventeen years of age.  He cites no authority for this proposition.  Most provisions of Arkansas law provide that a "Minor" is a person under the age of eighteen.  *See e.g.* Ark. Code Ann. § 5-68-501(7) (West) (pornography statute saying that "'Minor' means any person under eighteen (18) years of age.").   The sentencing guidelines provide in pertinent part:

> If the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense, increase by 2 levels.

U.S.S.G. § 3B1.4.  Here, there is no dispute Miller's son, Travis, was seventeen at the time of the commission of the offense.  In response to a question regarding the age of Travis Miller, Agent Chris Hembree replied "Travis Miller is 17 years old."  ECF No. 78, p. 67.  Section 3B1.4 was properly applied.  This claim should be denied.

Based on my review of the record in this case, I  also conclude that an evidentiary hearing is not required in this matter. The record conclusively shows that Petitioner is not entitled to the relief he seeks.[7]

**IV. <u>Recommendation</u>**:

Accordingly, based on the foregoing, it is recommended the instant Motion be denied and dismissed.  Further, pursuant to *28 U.S.C. §1915(a),* I recommend the finding that an appeal from dismissal would not be taken in good faith.

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.**

**DATED** this **24th day of April 2013.**

 /s/ Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE

---

[7] *See Buster v. United States*, 447 F.3d 1130, 1132 (8th Cir.2006) (holding that a § 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact).